UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VANESSA S. BAYERLEIN, | |
| Petitioner, | |
| v. | Case No. 25-cv-1027-JPG |
| ARLEN ANDERSON, JR., | |
| Respondent. | |

### MEMORADUM AND ORDER

**I.  Introduction**

This case is before the Court on Vanessa S. Bayerlein's Petition for Return of Child (Doc. 1). She brings this action under The Convention on the Civil Aspects of International Abduction, done at the Hague on October 25, 1980 ("Convention"), T.I.A.S. No. 11670, and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq.*[1] In ICARA, Congress codified the Convention. Bayerlein asks the Court to return her 5-year-old daughter, ARB, to Germany so custody matters can be determined in a German court. ARB's father Arlen Anderson Jr. has responded to the petition (Doc. 19).

On July 31, 2025, the Court held an evidentiary hearing on the petition at which Bayerlein and Anderson testified and at which exhibits were admitted. For the following reasons, the Court will grant the petition and will order Anderson to return ARB to Germany within 45 days so that a German court can resolve custody issues such as parenting time/ visitation.

---

[1] ICARA has been recodified from 42 U.S.C. § 11607 to 22 U.S.C. § 9003; the petition still refers to the old citations.

## II.    Facts

Both parties agree to many background facts.  To the extent they disagree, the Court makes the following findings based on the demeanor of the witnesses while testifying as well as the reasonableness of their testimony and the documentary evidence presented at the hearing.

Anderson, who was in the United States Army, met Bayerlein in 2019 when he was stationed at the Grafenwoehr Training Area in Germany.  She was a citizen of Germany, and he was a citizen of the United States.  They had a short-lived romantic relationship that ended in the fall of 2019.  The relationship resulted in ARB's 2020 birth in Germany.  From her birth until October 2024, ARB lived with Bayerlein in Weidenberg, Bavaria, Germany.  Anderson was in the United States at the time ARB was born.

Anderson returned to Germany in April 2021, resumed his romantic relationship with Bayerlein, and moved into Bayerlein's home.  There, they coparented ARB together, although Anderson often traveled out of the country for his job.  ARB attended kindergarten in Germany and participated in extracurricular activities like horseback riding.  She also spent time with Bayerlein's family members, including Bayerlein's son.

Anderson formally acknowledged his paternity in July 2021 by signing an Acknowledgement of Paternity.  The romantic relationship terminated around April or June 2024, but Anderson continued living in Bayerlein's home and continued coparenting ARB.  Around that time, they started talking about the possibility that Anderson would take ARB to the United States, although they did not agree on the duration of such a trip.  On September 19, 2024, Bayerlein and Anderson signed a Certificate of Declaration of Custody indicating they agree to joint custody over ARB.  They continued to coparent until October 2024, when

Anderson planned to take ARB to the United States.

In anticipate of Anderson's taking ARB to the United States, Anderson packed and shipped much of ARB's belongings.  Several days before they left the country, Bayerlein executed a Consent Form by the Legal Guardian authorizing Anderson to travel with ARB to the United States from October 31, 2024, to December 31, 2025.  This document belies any contention that the agreement was for ARB to remain in the United States for only a year, for it extended two months beyond a year.  By the same token, that it had a deadline is consistent with the parties' lacked any agreement where ARB would permanently reside thereafter.  It simply shows that the parties agreed that ARB could stay in the United States until December 31, 2025. Bayerlein also executed a Consent to Treat Minor Children authorizing ARB to receive medical care while under Anderson's care.  On October 31, 2024, Anderson took ARB with him to the United States to Belleville, Illinois, within the Southern District of Illinois.  There Anderson and ARB have resided with Anderson's mother and grandmother up to the present.

ARB had frequent contact with Bayerlein by Facetime or other video communication methods when she began residing in the United States.  Several weeks after she arrived, ARB told Bayerlein that she was not returning to Germany and that the United States was now her home.  When Bayerlein learned this, she told Anderson she wanted ARB returned to Germany immediately.  She sent Anderson an electronic message saying she revoked the authorization to travel and to receive medical care while in Anderson's care.

In the meantime, Anderson enrolled ARB in kindergarten in the United States and in summer camp, where she has made friends.  Anderson is enrolling ARB in first grade this fall. He also takes her to church activities where she has friends and ensures she gets care for her

3

medical needs.   ARB speaks English and German.   Anderson welcomed Bayerlein to visit ARB in the United States during the summer of 2025 and made suggestions about lodging, but that trip never happened.

Anderson did not remove ARB from Germany in dereliction of Bayerlein's custody rights.   Indeed, she gave him permission to travel with ARB to the United States from October 31, 2024, to December 31, 2025.   The effectiveness of her purported revocation of the consent to travel with Anderson, who had joint custody, is a matter for the courts of ARB's habitual residence to decide.   That consent has not expired by its own terms.   However, Anderson demonstrated at the Court hearing that he had no definite plans to return ARB to Germany before that expiration date but would abide by whatever decision the Court made.

Bayerlein contends that Germany is ARB's habitual residence, so any custody dispute must be decided by a German court.   Anderson concedes that Bayerlein has been exercising her custody rights while ARB has been in the United States, but he argues that the proper forum for a custody dispute is an Illinois court because Bayerlein relinquished her parenting time when she consented for ARB to travel to the United States.

**III.    Analysis**

    A.    <u>Jurisdiction and Authority</u>

The Court has the power to exercise jurisdiction over this matter pursuant to 22 U.S.C. § 9003(a).   Under ICARA, the Court must decide this case in accordance with the Convention. 22 U.S.C. § 9003(d).

    B.    <u>The Convention and ICARA</u>

Both Germany and the United States are signatories to the Convention.   The

Convention's "core premise [is] that the interests of children . . . in matters relating to their custody are best served when custody decisions are made in the child's country of 'habitual residence.'" *Monasky v. Taglieri*, 589 U.S. 68, 72 (2020) (internal citations omitted). "[T]he purpose of a Convention case is to determine whether a child has been wrongfully removed or retained from his habitual residence and, if so, to order the child's prompt return." *Baz v. Patterson*, 100 F.4th 854, 865 (7th Cir. 2024), *cert. denied,* 145 S. Ct. 1049 (2025). Its principle feature is to mandate the return of the child "to his or her circumstances prior to the abduction if one parent's removal of the child . . . violated the custody rights of the other." *Id.* The Convention merely provides a provisional remedy that establishes the forum for custody decisions; it does not call for a federal court to make a custody decision. *Monasky*, 589 U.S. at 72; *Baz*, 100 F.4th at 865.

ICARA entitles a person whose child has been wrongfully retained in the United States to petition in federal court for the return of the child. 22 U.S.C. § 9003(b). To succeed on a petition under the Convention, a petitioner must establish by a preponderance of the evidence that the respondent "wrongfully removed or retained" a child within the meaning of the Convention. 22 U.S.C. § 9003(e)(1)(A). The retention of a child is wrongful where: "(a) it is in breach of custody rights attributed to a person . . . under the law of the State in which the child was habitually resident immediately before the removal or retention; and (b) at the time of the removal or retention those rights were actually exercised . . . or would have been so exercised but for the removal or retention." 51 Fed. Reg. 10498 (1986); *accord* Convention art. 3, T.I.A.S. No. 11670. To determine whether this occurred, the Court asks four questions:

> (1) When did the removal or retention of the child occur?  (2) In what State was the child habitually resident immediately prior to the removal or retention?  (3)

> Was the removal or retention in breach of the custody rights of the petitioning parent under the law of the State of the child's habitual residence? and   (4) Was the petitioning parent exercising those rights at the time of the unlawful removal or retention?

*Redmond v. Redmond*, 724 F.3d 729, 737-38 (7th Cir. 2013).

Once the petitioner meets her initial burden, the burden shifts to the respondent to show "by clear and convincing evidence that one of the exceptions set forth in article 13b or 20 of the Convention applies" or "by a preponderance of the evidence that any other exception set forth in article 12 or 13 of the Convention applies."  22 U.S.C. § 9003(e)(2)(A), (B).  In this case, Anderson suggests this case fits within the exception in article 13(a):  that Bayerlein consented when he removed ARB from Germany and retained her in the United States.

    C.    <u>Application to this Case</u>

Bayerlein has established by a preponderance of the evidence that Anderson is wrongfully retaining ARB from her habitual residence in Germany and that Bayerlein is entitled to ARB's prompt return so a German court can make a custody or parenting time determination. To reach this conclusion, the Court considers the four factors listed in *Redmond*.

    1.    <u>Time of Retention</u>

The relevant question here is when the retention began, *i.e.*, when did Anderson retain ARB potentially without authority or the permission of Bayerlein.  *Baz*, 100 F.4th at 866 (citing *Walker v. Walker*, 701 F.3d 1110, 1118 (7th Cir. 2012)).  "Wrongful retentions typically occur when a parent takes a child abroad promising to return with the child and then reneges on that promise."  *Redmond*, 724 F.3d at 738 n.5.

The retention first potentially occurred in November 2024 when Bayerlein clearly stated her desire for Anderson to return ARB to Germany immediately.  Regardless of whether her

request was legally supportable in light of the travel consent extending to December 31, 2025, this was the moment their intentions regarding parenting time first appeared to diverge. *See, e.g., Baz*, 100 F.4th at 866 (time is when parent "learned the true nature of the situation").

If her request was not legally supported, the retention undoubtedly occurred when Anderson testified that he had no plans to return ARB to Germany by December 31, 2025, although he would let the Court decide. At that point, his intent to extend his parenting time beyond that agreed upon with Bayerlein became concrete enough to say that he was in derogation of her coparenting rights.

### 2. Habitual Residence

The next step is to determine ARB's "habitual residence" immediately before Anderson's retention of her. *See Baz*, 100 F.4th at 866. The Convention and ICARA do not define "habitual residence," but the Supreme Court holds that a child's "habitual residence" is "[t]he place where a child is at home, at the time of . . . retention." *Monasky v. Taglieri*, 589 U.S. 68, 77 (2020). That means "the family and social environment in which [the child's] life has developed" and where there is "some degree of integration by the child in a social and family environment." *Id.* at 77. So to boil it down, the critical question is, considering the totality of the circumstances: "Was the child at home in the particular country at issue?" *Id.* at 78.

This is a flexible, intensely fact-driven inquiry that depends on the unique circumstances of a particular case. *Id.* Where a child is "too young or otherwise unable to acclimate, depend on their parents as caregivers, the intentions and circumstances of caregiving parents are relevant considerations." *Id.* But an agreement between the parents is not necessary and certainly does not dictate what the "habitual residence" is. *Id.*; *Baz*, 100 F.4th at 868. .

ARB was and is "at home" in Germany despite her living in the United States for the last nine months. She lived in Germany the first four years of her life, was enmeshed in her German family, attended kindergarten, participated in outside activities, and had friends there. This is not outweighed by her experiences—equally as welcoming and nurturing—in the United States, where she is enmeshed in her American family, is in kindergarten or school, goes to summer camp, and attends church. Both of ARB's parents have done a wonderful job providing environments where she can be well-supported while she develops as a person. Nevertheless, her birth and four years in Germany outweigh the time she has spent in the United States. She is at home in Germany, and for that reason it is her state of habitual residence.

3. Breach of Bayerlein's Custody Rights

Here, the Court asks whether Anderson's retention of ARB in the United States was in breach of Bayerlein's custody rights under German law. *See Baz*, 100 F.4th at 870. A retention is wrongful "only if it violates the petitioning parent's rights of custody, which include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." *Id.* (internal quotations omitted) (citing *Abbott v. Abbott*, 560 U.S. 1, 11 (2010); Convention, art. 5). "A parent's rights of custody are determined by the laws of the country in which the child has his or her habitual residence." *Baz*, 100 F.4th at 870 (internal quotations omitted).

Bayerlein and Anderson have joint custody over ARB under German law. Bürgerliches Gesetzbuch [Civil Code] ("BGB"), § 1626a(1)1, https://www.gesetze-im-internet.de/englisch_bgb/englisch_bgb.html#p6449 (visited Aug. 1, 2025). Thus, one parent does not get to dictate where ARB resides and for how long, and if they disagree, they must resort to a German

8

court to decide the issue. *Id.* at § 1628 ("If the parents, in a single matter or in a particular kind of matter of parental custody the arrangements for which are of substantial importance for the child, cannot agree, the family court, on the application of a parent, may transfer the decision to one parent."). Regardless of the effectiveness of Bayerlein's attempted revocation of permission to travel, the agreement to let Anderson remain in the United States with ARB expires by its own terms on December 31, 2025, unless a German family court orders differently. Anderson's plan not to return ARB to Germany by that time unless the Court orders him to breaches Bayerlein's custody rights.

4. Exercise of Parental Rights at the Time of Retention

There is no question that Bayerlein was exercising her right as a parent of ARB at the time of Anderson's retention. "The standard for finding that a parent was exercising [her] custody rights is a liberal one." *Baz*, 100 F.4th at 871 (internal quotations omitted). If a parent has valid custody rights under the law of the state of the child's habitual residence, the Court should find that person failed to exercise those rights *only if* the parent has clearly and unequivocally abandoned the child. *Id.* Bayerlein did not abandon ARB. She agreed that Anderson, ARB's other parent, could spend time with ARB in the United States, and she continued to have contact with ARB while she was away from Germany, planned to visit her in the United States, and is preparing for her return home.

Bayerlein has established all four factors for wrongful retention by a preponderance of the evidence, so the Court turns to Anderson's defense of consent to retention.

5. Affirmative Defense

To avoid an order of return once a petitioner has shown wrongful retention, a respondent

may show by a preponderance of the evidence that the petitioner "had consented to or subsequently acquiesced in the removal or retention."  Convention art. 13(a); *see* 22 U.S.C. § 9003(e)(2)(B).  The documentary evidence shows Bayerlein consented to ARB's traveling to the United States with Anderson until December 31, 2025, but not beyond that date, as Anderson proposes to do.  He has not established consent as an affirmative defense.

## IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** Bayerlein's petition for return of ARB to Germany so a German family court can decide the disputes between Bayerlein and Anderson regarding decisions about ARB's upbringing (Doc. 1).  The Court's order does not award Bayerlein custody for any set length of time but is intended only to bring ARB physically within the jurisdiction of a German family court.  The Court **ORDERS** that ARB be returned to Germany within 45 days of entry of this order or any other date mutually agreeable to the parties.[2]  This Court **DIRECTS** the Clerk of Court to close this case.  Should the parties agree in writing, with advice of counsel, to a schedule for ARB to return to Germany for a German family court to resolve differences between her parents regarding her care, the Court would entertain a motion to vacate this order and dismiss the case.[3]

The Court further **ORDERS** that Bayerlein shall have 30 days to file a motion for fees

---

[2] For example, it may be in the best interest of ARB to return before the commencement of her fall semester in first grade or after she completes that semester so as not to interrupt her schooling more than necessary.  Further, the Court encourages the parties to begin appropriate proceedings in a German court promptly, even before ARB returns to Germany if possible, to obtain a prompt disposition of their disputes and to reduce the disruption of ARB's life.
[3] The Court is mindful that Anderson works in security, and it does not want to jeopardize his security clearance or ability to work by any adverse resolution of this ICARA case.  It is in no one's interest to harm his ability to support ARB financially.

and costs under 22 U.S.C. § 9007(b)(3) setting forth the amounts claimed, and Anderson shall have 14 days to respond to that motion.

     Finally, it important to note that, although ICARA refers to "abduction," the Court does not find that Anderson abducted ARB or in any way failed to allow Bayerlein to communicate or visit with ARB while she was in his care. He simply did not plan to voluntarily return ARB to Germany within the time Bayerlein agreed for him to keep her in the United States unless the Court ordered him to. Further, he has always indicated an intention to obey any court order. It is unfortunate that either of these fine parties has to be associated with the term "abduction."

**IT IS SO ORDERED.**
**DATED**: **August 1, 2025**

                                              s/ J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**