UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

VANESSA S. BAYERLEIN,

    Petitioner,

v.

ARLEN ANDERSON, JR.,

    Respondent.

Case No. 25-cv-1027-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on petitioner Vanessa S. Bayerlein's motion for attorney's fees and costs (Doc. 24). Respondent Arlen Anderson Jr. has responded to the motion (Doc. 25).

**I.    Background**

Bayerlein is a citizen and resident of Germany; Anderson is a citizen and resident of the United States. They share a five-year-old daughter, ARB.

In May 2025, Beyerlein brought this action under The Convention on the Civil Aspects of International Abduction, done at the Hague on October 25, 1980, T.I.A.S. No. 11670, and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq.*, seeking return of ARB to Germany so custody matters between her and Anderson could be determined in a German court. The Court held an evidentiary hearing on July 31, 2025, at which Bayerlein and Anderson testified. On August 1, 2025, the Court granted the petition and ordered Anderson to return ARB to Germany within 45 days so that a German court could resolve custody issues such as parenting time/visitation.

Critical to the Court's decision were its factual findings that in 2024, Bayerlein and Anderson agreed that Anderson would take ARB to the United States in October 2024 until no later

than December 31, 2025.  Several weeks after ARB arrived in the United States, Bayerlein reneged on this agreed timeframe and told Anderson she wanted ARB returned to Germany immediately.

The Court concluded that Anderson had not wrongfully *removed* ARB from Germany in but that he wrongfully *retained* her in the United States beginning when he stated at the hearing that he had no plans to return ARB to Germany before December 31, 2025.  *See* 22 U.S.C. § 9003(e)(1)(A).  The Court further found that the custody arrangements between Bayerlein, Anderson, and ARB should be decided by a court in Germany, the state of ARB's habitual residence and ordered ARB to be returned to Germany within 45 days or any other mutually agreeable date.

## II.     Costs and Fees

The matter is now before the Court again for a determination of an award of costs and fees under ICARA's fee provision:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C.A. § 9007(b)(3).

Bayerlein has asked for a total award of costs and fees in the amount of $26,440.43 comprising $24,386.00 in attorney's fees and $2,054.43 in expenses.  Anderson argues that an award of fees and costs would be inappropriate in light of the circumstances of the case.

The Court believes some award of costs and fees is necessary by the plain terms of the statute.  However, for the following reasons, it finds an appropriate award is an award of ten percent of what was requested.

2

As a preliminary matter, this is at least the fourth ICARA case this Court has considered in its decades on the bench. This case pales in comparison with the abusive and egregious behavior of other parents who have been ordered to return their children to other jurisdictions. Those other parents have essentially kidnapped their children without informing the abandoned parent about the location of the child or allowing the child to communicate with the abandoned parent. Here, Anderson brought ARB to the United States with Bayerlein's permission and documentation arguably showing that permission was to last until December 31, 2025. He did nothing wrong in bringing ARB to the United States and beginning to establish her life here. And while ARB was here, Anderson allowed free communication between ARB and Bayerlein and even encouraged Bayerlein to come to the United States to visit ARB. Their situation was a far cry from the kidnapping kind of cases the Court has seen before.

Against this background, the Court considers the testimony from the July 31, 2025, hearing. Based on their demeanor and the consistency of their testimony with the other evidence in the case, the Court finds that Anderson's testimony was credible, but Bayerlein's less so, especially with respect to the intentions behind her actions. Anderson's credible testimony and the inferences the Court draws from it paint this picture. Anderson reasonably believed leading up to October 2024 that Bayerlein was relinquishing physical custody over ARB for the immediately foreseeable future. She had told him essentially that she was at the end of her rope and could not handle raising ARB anymore. And the Court believes that was true. So Anderson stepped up to the plate and agreed to take physical custody of ARB, which he believed required moving to the United States to his family support system who could help him, as a single parent, raise a young child. Anderson reasonably relied on Bayerlein's position when he quit his job in Germany to take ARB to the

3

United States as they had agreed.

Bayerlein completed documents that indicated Anderson had authority to keep ARB in the United States and to provide appropriate parental care for her until at least December 31, 2025. The circumstances suggest that Bayerlein and Anderson were trying out a new physical custody arrangement to see if it would work. The December 31, 2025, date was a random, reasonable date far enough into the future that it might be a convenient point to reexamine whether the new situation was going to work, and it satisfied the need to fill in a blank on a form. Relying on Bayerlein's acquiescence to the plan to move ARB to the United States for the foreseeable future, Anderson uprooted his life to give his daughter—and Bayerlein—what was needed at the time.

And then Bayerlein changed her mind, with no regard for Anderson's reliance interest, only weeks after ARB arrived in the United States. Ostensibly her reversal was based on the statement of a four-year-old about where her home was. The Court believes she was suffering buyer's remorse about the custody arrangement to which she agreed, and instead of working with Anderson to come up with a plan to resolve the matter, she yanked him into court through this action.

Anderson incurred moving expenses bringing ARB to the United States, quit his job in Germany, bore the cost of ARB's upbringing for the past year, and has had to pay his own attorney's fees for this litigation, all for simply complying in good faith with the custody arrangement to which he and Bayerlein had agreed. And far from being defiant of this Court's authority in the face of uncertainty, Anderson stated he would obey any order to return ARB to Germany if the Court so ordered. He was always ready to obey the Court's decision, and it appears he has allowed ARB's timely return.

In the Court's opinion, Bayerlein unnecessarily turned a routine custody matter into an

international case. She could have initiated child custody proceedings at any time in Germany, and Anderson, who appears to be a reasonable person, very well could have agreed to abide by an order of that court. We will never know because she did not try before resorting to an ICARA suit.

Under ICARA, the Court was compelled to order ARB to go back to Germany, but that is only because this custody matter belongs in the German courts. It wishes it could have just made that determination and then let the parties agree how to implement it. But the statute compels a return, not just a declaration, so that is what the Court did.

As the Court said in its earlier order, it is unfortunate—and, the Court believes, unnecessary—that either of these fine parties had to be involved in this ICARA litigation. And it would be profoundly unfair and clearly inappropriate to make Anderson pay all of Bayerlein's costs and fees associated with the litigation. A fair amount would be ten percent of the amount she has requested.[1]

## III.    Conclusion

For the foregoing reasons, the Court **GRANTS** Bayerlein's motion for fees and costs (Doc. 24) but only in the amount of $2,644.00.

**IT IS SO ORDERED.**
**DATED**:  **November 6, 2025**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

---

[1] Such a reduction is further reasonable in light of the excessive hourly rate ($400.00 per hour) of Bayerlein's counsel and the performance of some secretary or paralegal duties by counsel. The Court need not pick through the submitted documentation of fees and costs to arrive at a precise amount because a blanket reduction is appropriate for the foregoing reasons.